# 23-239

IN THE

# United States Court of Appeals

FOR THE SECOND CIRCUIT

------------------------------------------------

ADAM BRUZZESE,

*Plaintiff-Appellant,*

*v.*

STEVEN DETTELBACH,

Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives,

*Defendant-Appellee.*

———————————

*On Appeal from the United States District Court*

*For the Eastern District of New York (Brooklyn)*

## BRIEF OF APPELLANT ADAM BRUZZESE

Adam Bruzzese, Pro Se

48 Weiden Street

Farmingdale, NY 11735

(917) 572-7450

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ………….………………………………….. i

TABLE OF AUTHORITIES…………………………………….…….. iv

STATUTES AND OTHER AUTHORITIES ………………………… vi

STATEMENT OF SUBJECT MATTER AND

    APPELLANT JURISDICTION…………………………….…… 1

STATEMENT OF THE ISSUE PRESENTED…………………………… 2

STATEMENT OF THE CASE…………………………………………… 3

    A. The Reassignment History……………………………………… 4

    B. Initial Legal Remedies ………………………………………… 5

    C. Due Process Claim…………………….………………………… 6

    D. The Motion to Compel ………………………...……………….... 7

STATEMENT OF FACTS…………………………………………… 8

    A. Appellant's Government Employment ………….……………… 8

i

B. Appellant's Line-of-Duty Shooting……………………..……..…… 9

C. Allegations Made Against Appellant………………….……..……... 10

D. Fitness For Duty Evaluation…………………………………..……... 12

E. The Reassignment……………………………………..……... 12

F. EEO Litigation Record………………………………………..……... 13

G. The Allegations Are False………………………………..……... 15

SUMMARY OF THE ARGUMENT…………………………………..……... 16

THE ARGUMENT………………………………………………..……... 18

A. The Reassignment is an Adverse Action …………………………... 18

B. Absolute Right to Due Process ……………………………………... 19

C. Notice and Opportunity to Respond …………………..………... 20

D. No Adversarial Hearing……………………………………..……... 23

E. The Due Process Claim Was Not Adjudicated on the Merits …...…….. 25

F. Collateral Estoppel Does Not Apply …………………..……....... 29

G. Lack of Candor by the US Attorney's Office …………………………. 30

H. "A Clear Right to be Reinstated as a Special Agent" ……………...… 34

CONCLUSION ……………………………………..………………….. 36

RELIEF SOUGHT BY APPELLANT……………………………………….. 36

ii

CERTIFICATE OF COMPLIANCE WITH FRAP 27(d), 32(a) ................... 38

CERTIFICATE OF SERVICE ......................................................... 39

iii

# TABLE OF AUTHORITES

**Cases**                                                                                          **Page(s)**

Arnett v. Kennedy,

      416 US 134 (1974) …………………………………..…….....…..…… 20

Burlington Indus., Inc. v. Ellerth,

      524 US 742, 761 (1998) …………………………………..…….…….. 18

Carey v. Piphus,

      435 US 247 (1978) …………………………….……….... 19, 26, 28, 33

Carter v. Seamans,

      411 F.2d 767 (1969) ……………………………………….……... 25

Cleveland Board of Education v. Loudermill,

      470 US 532 (1985) ……………………………………………...…… 20

Green v. Department of Health and Human Services,

      48 MSPR 161, 166 (1991) …………………………………...…….… 20

Greene v. McElroy,

      360 US 474, 496-97 (1959) …………………………….....……... 23, 24

Hollins v. Atlantic Co.,

      188 F. 3d 652, 662 (6th Cir., 1999) ……………………………….… 18

King v. US Postal Service,

      71 MSPR 362, 266 (1997) …………………………….……….….. 2

Lawson v. Avis Budget Car Rental, LLC,

      No. 15-CV-01510 (GBD) 2016 WL 3919653

      (SDNY July 12, 2016) ……………………………………….…... 18

iv

Leslie Kerr v. MSPB,

    17-2538 (Fed. Cir. 2018) ……………………………..……… 26

McAuliffe v. Mayor of New Bedford,

    155 Mass. 216; 29 N.E. 517 (Mass. 1892) ……………………..… 34

Ribando v. United Airlines, Inc.,

    200 F.3d 507, 510 (7th Cir. 1999) …………………….…….….... 18

Stephen v. Department of the Air Force,

    47 MSPR 672, 680-81 (1991) ……………………....…………..…. 20

Stone v. Federal Deposit Insurance Company,

    179 F.3d 1368 (1999) …………………………………….…... 21, 33

Ward v. US Postal Service,

    673 F.3d 1294 (Fed. Cir. 2012) ………………….………… 21, 33

| **Statutes** | **Page(s)** |
|---|---|
| 5 USC 556(d) | 23, 24 |
| 5 USC 2301(b)(2) | 35 |
| 5 USC 2301(b)(8)(A) | 22 |
| 5 USC 7513(b) | 20 |
| 5 USC 7513 (b)(3) | 24 |
| 5 USC 7701(c)(1)(B) | 23 |
| 28 USC 1291 | 1, 18 |
| 28 USC 1331 | 1 |
| 28 USC 1343 | 1 |
| 28 USC 1361 | 2, 7, 18, 25 |
| 28 USC 1651 | 2, 8, 18, 25 |

| **Regulations** | **Page(s)** |
|---|---|
| 32 CFR 776.42 | 31 |
| 37 CFR 11.303 | 31 |

| **Other Authorities** | **Page(s)** |
|---|---|
| US Dept. of Justice Civil Resource Manual, Section 215 | 2 |
| Fifth Amendment of the United States Constitution | 1, 17, 35 |
| Federal Rules of Civil Procedure, Rule 52(a)(5) | 34 |
| Federal Rules of Civil Procedure, Rule 52(a)(6) | 34 |
| Federal Rules of Civil Procedure, Rule 60 | 3, 4, 17, 27, 29 |

vi

## **Statement of Subject Matter and Appellant Jurisdiction**

This claim arises from plaintiff/appellant's reassignment from an 1811 – Special Agent (S/A) to an 1801 – Technical Surveillance Specialist (TSS) which took effect on June 7, 2009. Appellant's employment during the reassignment was with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). The location of the reassignment was within Brooklyn, NY in the Eastern District of New York with original jurisdiction under 28 USC 1331 and 1343.

This reassignment removed appellant's property, namely his employment as a law enforcement officer and 6(c) law enforcement retirement benefits. The loss of the 6(c) benefits includes approximately 3 ½ years of eligibility to retire with implications on the ability to continue participation health benefits (FEHB) and life insurance (FEGLI) programs, and approximately $23,000 per year in cash annuity.

The reassignment and loss of property was conducted in violation of appellant's right to Due Process under the Fifth Amendment of the US Constitution and in violation of several federal statutes governing adverse employment actions.

The Second Circuit Court of Appeals has jurisdiction of this appeal of the Orders issued in the Eastern District of New York on February 15, 2023 by Honorable Judge Ann M. Donnelly. Title 28 USC 1291 (Appx. pgs. 3-7).

1

Appellant filed a timely Notice of Appeal on February 24, 2023 (Appx. pg. 8). The Second Circuit also has jurisdiction under the All Writs Act – Title 28 USC 1651. The Complaint for a Civil Case in Case No. 22-cv-7948 sought only a motion to compel from the District Court under Title 28 USC 1361.

## Statement of the Issue Presented

Appellant's occupation and retirement benefits are his property of which he was deprived by the government (ATF) without adherence to Due Process and federal law when appellant was reassigned. Consistent with legal precedent and federal law, this reassignment must be reversed retroactive to its enactment (June 7, 2009), making the appellant whole (*status quo ante*), <u>King v. US Postal Service</u>, 71 MSPR 362, 266 (1997). The motion to compel in case number 22-cv-7948 was narrowly focused on reversing an adverse action which was illegally administered. Citing the US Department of Justice Civil Resource Manual, Section 215, the motion to compel is not a new cause of action against the government.

The Due Process violations committed by ATF entail failing to give appellant the required notice and reasonable opportunity to respond, and affording appellant an adversarial hearing to dispute allegations with the assistance of counsel.

2

The District Court erred in its dismissal of the motion to compel, relying on *res adjudicata* and collateral estoppel in its legal reasoning. The Due Process claim made to Honorable Judge Sterling Johnson in Case No. 13-cv-5733 was not decided on the merits. That Due Process claim was dismissed on procedural grounds, under Rule 60 of the Federal Rules of Criminal Procedure, by viewing it as a Motion for Reconsideration of appellant's previous EEO claim.

Since the deprivation of property in violation of Due Process and federal law still exists and no other legal remedy can be sought to undo it, the only remedy left is seeking the motion to compel ATF to reverse the illegally administered adverse employment action.

## Statement of the Case

This appeal pertains to a motion to compel based on Due Process violations made by ATF in reassigning appellant. This reassignment ended appellant's law enforcement officer occupation and discontinued appellant's 6(c) retirement benefits. This reassignment decision was made by then-Special Agent in Charge (SAC) of the New York Field Division Ronald Turk.

Appellant asserts and evidence in the record of Case No. 13-cv-5733 demonstrates that allegations made against him were never investigated by ATF,

but were instead forwarded to fitness evaluators through ATF Headquarters. The fitness evaluation was <u>not</u> an adversarial hearing in which appellant was able to dispute the allegations and appellant was not afforded legal counsel. The allegations are indeed false, as was later proven during the EEO litigation. Appellant was not given the required notice of charges and evidence, nor a reasonable opportunity to respond at the time of the reassignment in June 2009.

After the dismissal of the earlier EEO claim because appellant was found to be fit for duty, and the legal reasoning's reliance on Due Process violations, appellant sought a new claim based on these violations of Due Process and federal law. Judge Johnson deemed this new claim as an attempt to seek relief from the order in the EEO claim under Rule 60. This is an important distinction in that Judge Johnson's dismissal and the subsequent affirmation by the Second Circuit were made on procedural grounds under Rule 60, not adjudicated on the merits.

## A. <u>The Reassignment History</u>

On September 4, 2008, appellant's supervisor Eric Immesberger sent a memo to the Acting-SAC Delano Reid alleging several accusations of improper behavior committed by appellant (Appx. pgs. 10-11).

On December 1, 2008, Reid sent a memo to appellant requesting that appellant undergo a fitness evaluation (Appx. pgs. 12-14). On January 29, 2009, ATF Headquarters sent a letter to Federal Occupational Health to arrange a fitness for duty evaluation of appellant (Appx. pgs. 15-16).

Approximately between January of 2009 and April of 2009, appellant participated in a psychological evaluation. A final evaluation report was sent to ATF management (Appx. pgs. 17-26).

On June 4, 2009, appellant was issued a memo from Reid advising appellant that he was being reassigned to a non-law enforcement position (Appx. pgs. 27-28).

## B. Initial Legal Remedies

Appellant sought administrative and legal remedies in a timely fashion to reverse this adverse action. The end of legal remedies came on December 5, 2022 upon the Supreme Court of the United States' denial of a Petition for a Writ of Certiorari, Case No. 22-325. None of the legal remedies were dismissed for timeliness, frivolousness, or any other failure to bring an appropriate claim. Listing the lineage of cases is needlessly repetitious. A full recitation of the legal course this event has taken is described in the "Statement of the Case" section, pages 4-6 of the Appellate Brief in Second Circuit Case No. 21-1448.

## C. Due Process Claim

When the EEO claim concluded, appellant sought administrative remedies pertaining to Due Process violations. On March 10, 2020, appellant petitioned the District Court to unseal the record from the EEO litigation (13-cv-5733) upon the request from the MSPB Administrative Judge to provide evidence for the MSPB complaint (Case No. NY-0752-20-0091-I-1) (13-cv-5733 Docket #90, Appx. pg. 32).

On March 30, 2020, the MSPB rendered its final dismissal for lack of jurisdiction without waiting for the decision from the District Court regarding the sealed record.

On April 10, 2020, appellant filed a motion with the District Court advising that the MSPB had dismissed the complaint before a decision was made to unseal the record (rendering that a moot point), and requesting that the District Court now hear the Due Process claim since it was the next step in the judicial process. (13-cv-5733 Docket #94-95, Appx. pg. 32).

On May 27, 2021, appellant received in the mail the Court's Memorandum(s) and Order(s) to deny the motion to unseal the record and to deny the motion to hear the Due Process claim.

On June 8, 2021, appellant timely filed a Notice of Appeal with the Second Circuit Court of Appeals. The Second Circuit affirmed the District Court's decision and a Petition for a Writ of Certiorari was denied by the United States Supreme Court.

### D. <u>The Motion to Compel</u>

After receiving notification of the Supreme Court's denial, appellant sent a memo through ATF chain of command asking ATF management to reverse on their own accord the illegal adverse action since appellant was deemed by doctors and the Court to be fit for duty, not unsuitable for a law enforcement occupation, and there were never any charges filed against appellant for misconduct or subpar performance. When ATF management refused, appellant sought a motion to compel from the District Court under Title 28 USC 1361 (Case No. 22-cv-7948). Appellant asked the District Court solely to compel ATF to reverse the adverse employment action because it was indeed illegally and un-Constitutionally administered.

Upon the dismissal of the motion to compel, appellant now brings this timely appeal. Judge Donnelly cited *res adjudicata* and collateral estoppel to support the decision to dismiss the motion. Respectfully, Judge Donnelly is erroneous in applying these doctrines. In short, the Due Process claim was never

decided on its merits, something inherently necessary to these doctrines. Further, the Second Circuit has additional powers to enforce injunctive relief under Title 28 USC 1651.

## Statement of Facts

In an effort to avoid duplication, appellant directs the Second Circuit's attention to the written legal briefs submitted to the Second Circuit during Case No. 21-1448 by both parties. The facts leading up to the reassignment and included in the record of Case No. 13-cv-5733 are unchanged. The points made below summarize the facts from those submissions.

## A. Appellant's Government Employment

Appellant began government employment on August 25,1997 as an US Immigration Inspector at JFK Airport. Appellant was hired by the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) on May 7, 2000 as an 1811 – Special Agent until the reassignment at issue was made on June 7, 2009. Pertinent to the Due Process issue, it is undisputed that appellant was a tenured employee in his 1811 Series occupation at the time of the reassignment.

Appellant's performance evaluations have always been rated fully successful or better. Except for one letter of reprimand for a paperwork error, appellant has a

spotless disciplinary history. Appellant's personnel folder contains several commendations for his work (Appx. pgs. 34-41).

Appellant never failed a firearms qualification during his employment as a Special Agent. Appellant never had an incident of negligence, recklessness, or misconduct involving firearms. Appellant never lost or had stolen from him any firearm.

Appellant was a Firearms Instructor with ATF from February 2008 until November 2017 (Appx. pg. 42). Appellant was a Taser Instructor starting in September 2008 (Appx. pg. 43). Appellant was the primary role player during tactical training for the downstate groups of the NYFD from approximately 2003 until February 2021. Appellant attended Firearms Interstate Nexus training in March 2009 (Appx. pg. 44).

**B. Appellant's Line-of-Duty Shooting**

On November 20, 2007, appellant was involved in a fatal shooting during an ATF operation in the Bronx, NY. The shooting was determined to be a lawful and proper use of force by ATF's internal use of force review and a Bronx grand jury. Appellant was awarded ATF's Medal of Valor for this incident (Appx. pg. 45).

Appellant complied with all ATF policies regarding critical incidents, fully cooperated with every part of the investigation, and met numerous times with ATF's Peer Response Program which included a mental health professional.

Between November 21, 2007 and September 3, 2008, appellant continued full duties in investigating firearms trafficking, attending legal proceedings in the courts, participating in operations, acting as an undercover operative, and attending specialized training to become a Firearms Instructor.

## C. Allegations Made Against Appellant

On September 4, 2008, appellant's supervisor, Eric Immesberger sent a communication (referred to as a memo) to Acting-SAC Delano Reid containing several allegations of misconduct against appellant. Immesberger claimed that several coworkers of appellant had reported information to him regarding these alleged behaviors.

On September 4, 2008, Reid had a brief meeting with appellant and Immesberger during which Reid temporarily restricted appellant's duty and had appellant relinquish his issued firearms and a personal firearm (Appx. pg. 13, 3rd paragraph). Reid did not take away appellant's Special Agent credentials (Appx. pg. 46, lines 22-25). Reid stated that these measures were not meant to punish

appellant, but taken for precautionary reasons due to the allegations in the memo (Appx. pg. 13, 3rd paragraph).

In the following days, Reid allowed appellant to participate in Taser Instructor training (Appx. pgs. 47-48) and allowed appellant to rejoin the Joint Firearms Task Force group to continue working his open investigations, with the restriction that appellant could not carry a firearm or participate in law enforcement operations (Appx. pgs. 49-50).

Approximately one month after September 4, 2008, Reid had a meeting with appellant to discuss the memo from Immesberger. Appellant told Reid that the allegations made by Immesberger in the memo were lies, mischaracterizations, or incidents taken out of context to alter their meaning (Appx. pg. 51, lines 7-12). Reid made no further inquiry regarding the veracity of Immesberger's allegations.

ATF's policy on Workplace Violence mandated an investigation be conducted by an Incident Response Team to include the Office of Inspection (Internal Affairs) and the Physical Security Branch (Appx. pg. 52, chapter B, sub. 12) due to the nature of the allegations (Appx. pgs. 53-54, chapter D, sub. 32(c), (e) and (g)). No one in ATF management contacted Internal Affairs to investigate the workplace violence allegations. Reid had previously worked in ATF's Internal Affairs section and should have known to initiate an investigation.

### D. **Fitness for Duty Evaluation**

On December 1, 2008, Reid initiated the process for a fitness evaluation of

appellant (Appx. pgs. 12-14) seeking medical documentation. Appellant was

advised that if he did not consent to undergoing the fitness evaluation, there could

be employment repercussions (Appx. pg. 55, last paragraph). The allegations made

by Immesberger in the September 4, 2008 memo (Appx. pgs. 10-11) are repeated

from Reid to ATF Headquarters and again to Federal Occupational Health who

conducted the evaluation (Appx. pgs. 15-16).

Dr. Haviva Goldhagen submitted a final evaluation report on April 22, 2009

(Appx. pgs. 17-26). The report stated that appellant had no psychological illnesses

and that any alleged behavioral problems should be handled by ATF as an

administrative or disciplinary matter (Appx. pg. 26, 2nd paragraph). The report

advised that appellant's past work performance is the best indicator of his future

performance (Appx. pg. 26, 1st paragraph).

### E. **The Reassignment**

On June 4, 2009, appellant was given a memo advising appellant of the

reassignment (Appx. pgs. 27-28). SAC Turk stated to appellant that he could have

fired appellant, but instead reassigned appellant to a position that had similar pay

and authorized the use of a government vehicle (Appx. pg. 56, lines 3-10).

The reassignment is from an 1811 – Special Agent to an 1801- Technical Surveillance Specialist. These are completely different jobs in terms of their job descriptions, legal authorities, duties and responsibilities. The retirement benefits for the "1801" position are lesser. As an "1801," appellant is required to be employed for an additional 3 ½ years to be eligible for full retirement in order to continue participation in the federal employee health benefits and life insurance plans. Appellant's retirement calculation as an "1801" is reduced in accrued percentage and principal salary. (Appx. pgs. 57-59). Should appellant retire at the minimum eligible age, the reduction in monetary annuity is approximately $23,000 annually.

## F. **EEO Litigation Record**

During the EEO litigation a lengthy record of depositions, affidavits and other exhibits was developed. Eight ATF coworkers were deposed, two NYPD Task Force Officer co-workers gave sworn affidavits, two doctors from the FFD were deposed, and two expert witnesses were deposed.

During his deposition, SAC Turk stated that he did not speak to any of appellant's coworkers named by Immesberger (Appx. pg. 60, line 17 through pg. 61, line 23), that he wasn't conducting an investigation (Appx. pg. 62, lines 24 to 25), and he relied on the information he received from Immesberger and Reid

(Appx. pg. 64, lines 9 to 18). SAC Turk stated that he did not review appellant's personnel folder (Appx. pg. 63, lines 18 to 22). SAC Turk also stated he didn't know of any policy permitted such a reassignment (Appx. pg. 65, line 24 through pg. 66, line 23).

During his deposition, Dr. Ahmad stated that if appellant's behavior was inaccurately described, then appellant should not have been sent for any evaluation (Appx. pg. 68, line 17 through pg. 69, line 2). Dr. Ahmad testified that he did not find appellant to be unfit for duty or unsuitable for a law enforcement position. (Appx. pg. 67, lines 7 to 9, Appx. pg. 70, line 14 to 20, Appx. pg. 67, line 10 through Appx. pg. 68, line11; Appx. pg. 71 line 14 to pg. 72, line 9).

During her deposition, Dr. Goldhagen stated that the restrictions were due to ATF management concerns, and if the descriptions of the behavior were not accurate, then she would have not recommended any restrictions in returning appellant to full duty (Appx. pg. 73, lines 2 to 23). Dr. Goldhagen testified that she did not find appellant to be unsuitable for a law enforcement position because suitability is based on job performance and is not a medical concern. (Appx. pg. 74, line 20 through Appx. pg. 75, line 2; Appx. pg. 77, lines 4 to 17; Appx. pg. 78, line 19, through Appx. pg. 79, line 14).

In his deposition, ASAC Reid stated that if appellant was found fit for duty (which was the finding), then he would have reinstated appellant to full duty (Appx. pg. 80, lines 9 to 24).

In Dr. Ahmad's file (Appx. pg. 81), it is seen that Dr. Ahmad interviewed appellant, then later interviewed Immesberger (Appx. pg. 82, 4th paragraph). Dr. Ahmad did not conduct a second interview with appellant to discuss these additional allegations.

Appellant's legal brief and appendix from Case No. 21-1448 contains numerous references where Dr. Bardey – the government's expert witness – stated that the evaluation was based on the *assumption* that appellant's behavior actually took place, that that the fitness evaluators were not fact-finders or judging the truthfulness of the allegations, and that appellant's dispute of the allegations was viewed as exhibiting a defensive attitude, a justification for improper behavior, or a negative attribute.  (See Appellate Brief and Appendix, Case No. 21-1448, pg. 20).

## G. <u>The Allegations Are False</u>

Appellant's Brief and Appendix from Case No. 21-1448 contains a comprehensive explanation of the evidence in the record refuting and disproving the allegations made against appellant. Aside from the allegations being false is the fact that no charge for misconduct or poor performance was levied against

appellant. "Attachment One" (Appx. pgs. 84 to 106) of appellant's submission dated March 27, 2020 (13-cv-5733 Docket #93, Appx. pg. 32) contains 19 allegations made by Immesberger through his memo to Reid (Items 1 to 10) or later to Dr. Ahmad (Items 11 to 19), and where each one of these allegations is refuted or disproven by at least one witness, an applicable ATF policy, or by the doctors from the fitness evaluation (Internal citations made to District Court exhibits). Appellant also sent an outline of the unsubstantiated allegations being repeated throughout the evaluation process. (Appx. pgs. 107 to 112).

"Attachment One" contains documented evidence form the record showing that Reid knowingly forwarded false allegations to ATF Headquarters and on to the fitness evaluation. It also contains instances where Immesberger contradicts some of his own allegations in his deposition testimony. In his deposition, Immesberger denied making some of the statements to Dr. Ahmad. Dr. Ahmad, a disinterested third party, affirmed that any statement he attributed to Immesberger was in fact Immesberger's own words (Appx. pgs. 105 to 106, Item 19).

## Summary of the Argument

The Motion to Compel sought in Case No. 22-cv-7948 is based on violations of Due Process. The motion seeks the reversal of an illegal and un-Constitutional

reassignment. The Fifth Amendment to the US Constitution guarantees that the government cannot deprive a person of their property without Due Process of Law. Appellant's occupation and retirement benefits are his property which were deprived in violation of Due Process when ATF management failed to give appellant written notice of charges with an explanation of supportive evidence, and provide appellant with a reasonable opportunity to respond.

Appellant was not afforded a hearing to dispute allegations prior to or immediately following the reassignment. ATF management utilized a Fitness For Duty evaluation report in making the reassignment decision (Appx. pg. 33, line 16-18). The fitness evaluation was not an adversarial hearing. ATF management forwarded unsubstantiated allegations to the fitness evaluators and additional allegations were made by Immesbegrer during the fitness evaluation *after* the evaluators spoke to appellant.

Respectfully, Judge Donnelly is incorrect in the application of *res adjudicata* and collateral estoppel. Judge Johnson viewed that appellant's Due Process claim is an attempt to re-litigate the EEO claim, seeking relief from the EEO judgement under Rule 60 of the Federal Rules of Civil Procedure. The Second Circuit affirmed and certiorari was denied by the United States Supreme Court. The dismissal of the Due Process claim was *not* made on its merits. A procedural dismissal does not bar appellant from seeking a motion to compel under Title 28

USC 1361 or Title 28 USC 1651. Since the motion to compel could not have been sought while other legal avenues still existed (the Due Process claim itself), the motion to compel is still a viable remedy. Precedent case law and federal statute both require the reversal of the adverse action.

## **The Argument**

The Second Circuit has appellate jurisdiction over the District Court under Title 28 USC 1291 and also has its own authority to issue mandamus orders under Title 28 USC 1651. The District Court erroneously dismissed the motion to compel in Case No. 22-cv-7948 because the claim of due process violations from the previous litigation was not decided on the merits. The Circuit Court can issue its own mandamus ruling in favor of appellant because the injunctive relief described in the motion to compel is mandated by law.

### A. **The Reassignment is an Adverse Action**

Appellant's reassignment is defined as an adverse action in precedent cases Hollins v. Atlantic Co. (C.A. 6, 1999), Burlington Indus., Inc. v. Ellerth, 524 US 742, 761 (1998), Ribando v. United Airlines, Inc., 200 F.3d 507, 510 (7th Cir. 1999), and Lawson v. Avis Budget Car Rental, LLC, No. 15-CV-01510 (GBD) 2016 WL 3919653 (SDNY July 12, 2016). These precedents address adverse

changes in conditions of employment, diminished responsibilities, and material loss in benefits.

Appellant was reassigned to a non-law enforcement position which removed appellant's title and authorization as a law enforcement officer, as well as 6(c) law enforcement retirement benefits (Appx. pg. 56, lines 15 to 25). Judge Weinstein in his finding in the EEO claim stated that the reassignment is an adverse action, but not linked to discriminatory animus. On page 12 of his Memorandum of Law (13-cv-5733 Docket #49, Appx. pg. 31), AUSA James Cho ceded the point that the permanent reassignment in June of 2009 was an adverse action.

**B. <u>Absolute Right to Due Process</u>**

Appellant's right to procedural Due Process is absolute and does not depend upon the merits of appellant's substantive assertions. *Carey v. Piphus*, 435 US 247 (1978). The Court should set aside the facts of the incident and focus on the issue of Due Process. In *Carey v. Piphus*, the violation of Due Process results in a finding irrespective of the facts of the incident. Since ATF deprived appellant of notice, a reasonable opportunity to respond, or an adversarial hearing, the adverse action must be reversed. The question of the reassignment being discriminatory isn't arrived at yet because the Due Process question comes first and foremost.

## C. <u>Notice and Opportunity to Respond</u>

As a *tenured* 1811 – Special Agent, several precedent cases describe that appellant's occupation is his property and removal of his occupation requires due process in the form of notice containing the charges, an explanation of its evidence, and reasonable opportunity to respond to present [his] side. *Cleveland Board of Education v. Loudermill*, 470 US 532 (1985); *Arnett v. Kennedy*, 416 US 134 (1974). The agency *must* give the employee notice (of charges, evidence and opportunity to respond) and failing to take any of these steps *will result in the action being reversed* (emphasis added) on the basis that violates the employee's minimum due process rights. *Green v. Department of Health and Human Services* 48 MSPR 161, 166 (1991); *Stephen v. Department of the Air Force* 47 MSPR 672, 680-81 (1991).

Title 5 USC 7513(b) clearly states that an employee is entitled to 30 days' written notice of the action, and no less than seven days to answer to such an action. This statute further states that appellant should have been given a written decision with the reasons therefor.

Additional precedent case law states that failure to provide notice and a meaningful opportunity to respond regarding a penalty is a violation of the employee's substantive rights, and a Chapter 75 action (referring to employee

misconduct) with such a violation must be cancelled. *Ward v. US Postal Service* 673 F.3d 1294 (Fed. Cir. 2012); *Stone v. FDIC* 179 F.3d 1368 (1999). *Stone* adds that an adverse action that violates a substantive right *cannot stand.* (Emphasis added). *Stone* and *Ward* focus on the inclusion of ex-parte statements in the administration of adverse actions. The record from 13-cv-5733 shows undisputable evidence that Immesberger made one set of allegations in his memo to Delano Reid and additional allegations to Dr. Ahmad. These allegations were made to Dr. Ahmad *after* Dr. Ahmad interviewed appellant. (Appx. Pg. 113, lines 9 to 17). This gave appellant no notice or opportunity to respond to these additional allegations.

The June 4, 2009 memo advising appellant of his reassignment does not contain any reference to any charge of misconduct or substandard performance, and no reference to any evidence to support a reason for the reassignment. The effective date of the reassignment was June 7, 2009, well short of the statutory requirement. All three of these factors are individual violations of the required Due Process necessary to deprive appellant's property and thus requires the reversal of the reassignment.

The allegation that appellant was reassigned because he could not be ensured to safely or responsibly handle firearms does not appear in the 2009 reassignment memo. ATF cannot supply any evidence to support this reason because such

evidence does not exist. Evidence in the record demonstrated that the opposite is true. It is a meritless allegation.

Judge Weinstein stated that defendant (ATF) offered non-discriminatory reasons for the reassignment and referenced Ronald Turk's concerns about appellant's behavior. In his deposition, SAC Turk stated that he had "cause" for making the reassignment decision and relied on a "totality of the behaviors." SAC Turk never stated what behaviors he was relying upon (Appx. pg. 114, subsections 59. a. and 59. b.). The reassignment memo contains no reference to any such non-discriminatory reason, cause, misconduct charge related to alleged behaviors, nor any evidence to support any reason, cause or charges.

A "totality of the behaviors" is completely arbitrary. Title 5 USC 2301(b)(8)(A) protects employees against arbitrary action. Under SAC Turk's reasoning, any number of allegations or the level of seriousness of any one allegation would suffice to make the reassignment, no matter their veracity. SAC Turk had a requirement to specify what behavior equated to misconduct and to prove by a preponderance of evidence that misconduct actually occurred.

### D. <u>No Adversarial Hearing</u>

**Ronald Turk testified that he *didn't even see a need* to hear appellant's side** (Appx. pg. 62, lines 8 to 16). Allowing the accused a chance to be heard is a basic pillar of American juris prudence.

"…where government action seriously injures an individual, and the reasonableness of the action depends upon fact findings, the evidence used to prove the government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." Where the "evidence consists of the testimony of individuals whose memory might be faulty or who, in fact, might be perjurers, or persons motivated by malice, vindictiveness, intolerance, prejudice, or jealousy," the individual's right to show that it is untrue depends on the rights of confrontation and cross-examination. "This court has been zealous to protect these rights from erosion. It has spoken out not only in criminal cases,…but also in all types of cases where administrative…actions were under scrutiny." *Greene v. McElroy* 360 US 474, 496-97 (1959).

Under Title 5 USC 556(d), the proponent of a(n) order has the burden of proof. It further states that "a sanction may not be imposed…except on consideration of the whole record or those parts therefore cited by a party and supported by and in accordance with the reliable, probative, and substantial

23

evidence." "A party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts." Title 5 USC 7701(c)(1)(B) further asserts the burden upon ATF to prove by a preponderance of evidence that misconduct was committed by appellant.

Had ATF management followed its policy regarding adverse actions which is consistent with *Greene v. McElroy* and Title 5 USC 556(d), a proper adversarial hearing would have been conducted that allowed appellant the chance to present evidence in his own favor, to dispute allegations, and to have legal representation (Title 5 USC 7513(b)(3)).

Appellee has never disputed the fact that the fitness evaluation was not a hearing. Their expert witness, Dr. Alexander Bardey testified during the EEO claim that appellant's disputes of alleged behaviors were viewed as negative attributes, the doctors were not fact-finders, and agreed that Dr. Goldhagen jumped to conclusions that appellant acted improperly (Appx. pg. 115, line 23 through pg. 117, line 25; Appx. pg. 118, line 6 through pg. 122, line 23). Dr. Samoon Ahmad stated in his deposition that his understanding of the allegations came from what Immesberger told him. (Appx. pg. 123, line 20 through pg. 126, line 8). The fitness evaluation report contains multiple references to findings of improper behavior

when in reality, these were uncorroborated and unsubstantiated allegations. (Appx. pg. 25, 5th paragraph; Appx. pg. 26, 3rd paragraph).

### E. <u>The Due Process Claim Was Not Adjudicated on the Merits</u>

Respectfully, Judge Donnelly erroneously applied the doctrines of *res adjudicata* and collateral estoppel in her dismissal of the Motion to Compel in Case No. 22-cv-7948. The Motion to Compel sought from the District Court under 28 USC 1361 is not a new claim against the government (likewise for 28 USC 1651). Appellant solely seeks an order to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." The issue of whether this Motion to Compel could have been raised in the prior action is addressed in precedent case *Carter v Seamans*, 411 F.2d 767 (1969), (availability of another remedy able to achieve the desired outcome). Appellant could not petition for mandamus relief while the claims were being heard by the District Court, Second Circuit and US Supreme Court. It is the cessation of litigation which enables this petition because despite the findings in the litigation, appellant is still deprived of his property without Due Process and in violation of the law.

An "opportunity to litigate the discrimination claim at the heart of his mandamus claim" is not what this petition is seeking. The request is being sought to reverse an illegally and un-Constitutionally administered adverse action. The inability to prove a discrimination claim does not make the violation of Constitutional rights permissible, especially when these violations are evidenced during the litigation of the discrimination claim. According to the *Carey v. Piphus* standard, once Due Process is violated, the discrimination question is secondary.

The claim regarding Due Process which was decided by Judge Johnson resulted after the conclusion of the EEO claim and followed directly on the heels of administrative measures sought to remedy the Due Process violations. As was argued in the Due Process claim, it was the opinions of Judge Weinstein and of the Second Circuit which highlight and evidence the violations of Due Process. Further, Judge Weinstein relied upon violations of Due Process to support his ruling.

Appellant explicitly cited *Leslie Kerr v. MSPB*, 17-2538 (Fed. Cir. 2018) as the precedent which allowed the Due Process claim to be heard as a new cause of action after the EEO claim was dismissed. Citing *Kerr*, appellant argued that since the EEO litigation *could not* provide a remedy, appellant is not foreclosed from seeking a new course that could provide a remedy. Appellant's fitness for duty without psychological illness was the reason why the Second Circuit opined that

26

appellant could not have been regarded as disabled. This led to the "damned if you do and damned if you don't" statement made by a Circuit Judge during oral argument of the EEO appeal (Case No. 16-2775-cv, audio recording at 14:03) because either finding of the fitness evaluation (fitness or unfitness) would have the same outcome – appellant losing his law enforcement occupation.

The failure to adhere to Due Process was included in the EEO litigation to the extent that even one of the Circuit Judges asked appellant's then-counsel about the subject of Due Process (Case No. 16-2775-cv, audio recording at 21:25). Appellate's brief in 16-2775-cv states 16 references to Due Process violations or Immesberger's credibility issues. However, the Second Circuit stated that the later prongs of the EEO claim involving Due Process violations would not be considered after appellant could not overcome the first prong that he was regarded as disabled (13-cv-5733 Docket #86, Appx. pg. 32, Footnote #5). This clearly left the Due Process violations unadjudicated on their merits. This also impacts the third element of Judge Donnelly's application of res adjudicata in that the Due Process claim was raised in the prior action, but the Second Circuit explicitly stated that they did not consider it.

Judge Johnson and the Second Circuit dismissed the Due Process claim on procedural grounds, citing Rule 60 of the Federal Rules of Civil Procedure. Procedural dismissals do not equate to an adjudication on the merits. An

adjudication on the merits of the Due Process claim *could not have been made* because the violations are so demonstrable evident. Had an adjudication of the Due Process issue been decided by applying the law to the facts, the reassignment would have to have been reversed. It is impossible for anyone to apply the law to the facts and come to a finding that Due Process was followed. Just by looking at the single point of "opportunity to respond," the legal minimum is seven days' notice and the reassignment memo provided only three days' notice. Additionally, there exists no written notice of charges or supporting evidence and no hearing was ever held. The evidence in the record from a disinterested third party, Dr. Ahmad, clearly show the introduction of ex-parte communications; by itself another separate violation of Due Process explicitly requiring a reversal of the reassignment. Instead, Judge Johnson and the Second Circuit procedurally denied the ability for appellant to be heard.

*Carey v. Piphus* also impacts procedural dismissal versus adjudication on the merits. In *Carey v. Piphus*, a factual examination of an incident is not even broached once Due Process violations are present. When Judge Weinstein referred to the reassignment as an adverse action and again when Judge Weinstein cited ATF having reasons for the reassignment, the Due Process violations should have taken center stage, since appellant was deprived of his Due Process rights. The existence of Due Process violations force the reversal of the reassignment before

and notwithstanding the question of EEO violations. Had a decision been reached on the merits, Judge Weinstein and/or the Second Circuit would have and should have recognized that appellant's reassignment ran afoul of Due Process.

**F. Collateral Estoppel Does Not Apply**

There is some overlap with the two doctrines of *res adjudicata* and collateral estoppel. The issue of the parties involved is a moot point. In the EEO and Due Process claims, the claim for damages is made against the US government, and through the Department of Justice's administration of ATF, the Attorney General is the defendant. The Motion to Compel seeks an officer or employee of an agency to act, and thus is applied to the Director of ATF himself. There is no attempt by appellant to re-hear any litigation just by changing the name and title of the defendant. Steven Dettelbach is the Director of ATF and has the authority to reverse the reassignment of an employee of ATF.

Both doctrines rely on the decision being made on the merits, and the question of whether the merits of Due Process violations actually occurred appear in the previous section. Addressing collateral estoppel, the issue of Due Process was not actually litigated or decided, but rather procedurally dismissed under Rule 60. Throughout AUSA David Cooper's Brief For the Defendant-Appellee in case No. 21-1448, the argument is made that Rule 60 should not provide relief for

appellant. AUSA Cooper stated that appellant was given all the process that was due, but provided no evidence that Due Process was followed, to demonstrate an adjudication on the merits.

Regarding collateral estoppel, the issue litigated could neither support a valid, nor a final judgement on the merits. Judge Weinstein's reliance on supposed non-discriminatory reasons given by ATF management renders the judgement to dismiss the EEO claim as invalid because it rests on illegal and un-Constitutional action by ATF (failure to give notice or opportunity to respond). Illegally obtained evidence could not support a criminal conviction, no matter its probative value. Due process protects life, liberty and property equally. The legal mechanisms to deprive each are different, but Due Process is a constant requirement. It cannot be a final judgement because appellant is denied the opportunity to pursue these Due Process violations. The complete removal of appellant's Constitutional rights is what is finalized. By allowing the judgement to stand valid or final affirms that appellant is indeed deprived of his property without Due Process. This cannot and should not happen. The order cannot be valid if it is un-Constitutional.

## G. Lack of Candor by the US Attorney's Office

The full and fair opportunity to litigate in the prior proceeding was negatively impacted by lack of candor on the part of the US Attorney's Office.

Title 32 CFR 776.42 and Title 37 CFR 11.303 both govern "candor towards the tribunal." During the litigation of the EEO claim and later in the attempt to be heard in the Due Process claim, the US Attorney's Office failed to advise the Courts of the violations of Due Process, and the lack of credibility of their key witness - Immesberger. As stated above, AUSA James Cho ceded the point that the reassignment was an adverse action. This obliged the US Attorney's Office to advise the Court that the adverse action was administered in violation of Due Process.

The US Attorney's Office was obligated to advise the Court that numerous witnesses testified contrary to what Immesberger alleged, including false allegations that appellant violated ATF policies. The US Attorney's Office was required to advise the Courts that Immesberger was not a credible witness. In a submission during the EEO litigation, Assistant US Attorney James Cho contradicted one of the allegations (appellant's meetings with the Peer Response Team) (Appx. pg. 127, paragraph 57) and one of the findings in the fitness evaluation report (appellant alleged to be unreliable in an undercover assignment). (Appx. Pg. 128, paragraph 114). When Judge Weinstein listed as "facts" a repeat of these disproven allegations, the US Attorney's Office was required to advise the Second Circuit in Case No. 16-2775-cv that these "facts" were disproven by numerous witnesses.

Firearms safety was the foundation of Judge Weinstein's ruling in the "otherwise qualified" prong of the EEO claim. This prong, which contained elements of Due Process violations as stated by appellant during oral arguments in Case No. 16-2775-cv, was not considered by the Second Circuit in their ruling. The depositions and affidavits in the record contain numerous references specifically describing appellant as safe and responsible with firearms, including duties as a Firearms Instructor. (Appx. pg. 129, lines 5 to 25; Appx. pg. 130, lines 6 to 23; Appx. pg. 131, lines 19-20; Appx. pg. 132, lines 3 to 11; Appx. pg. 133, line 14 through pg. 134, line 13; Appx. pg. 135 to 136, 6th paragraph; Appx. pg. 137, 21st paragraph; Appx. pg. 138, line 11 through pg. 139, line 3; Appx. pg. 140, lines 15 to 23; Appx. pg. 141, line 11 through pg. 143, line 25; Appx. pg. 144, line 21 through pg. 145, line 23; Appx. pg. 146, lines 18 to 23; Appx. pg. 147, line 25 through pg. 149, line 2; Appx. pg. 150, lines 14 to 23; Appx. pg. 151, line 8 through pg. 152, line 5). There are also several photographs depicting appellant safely handling firearms (Appx. pgs. 153 to 157).

Had the US Attorney's Office upheld their duty to candor, they would have advised both the District and Circuit Courts that any allegation regarding firearms safety concerns was meritless and should not have been included or considered by the Courts. They should have admitted that the evidence in the record proved that appellant has never been unsafe or irresponsible with any firearm.

The US Attorney's Office knew that Dr. Ahmad's files which were revealed during discovery in November of 2014 evidenced ex-parte statements made by Immesberger. Upon discovery of this violation of Due Process, seen in the *Stone* and *Ward* precedents, the US Attorney's Office was obliged to notify the Court of the requirement to reverse the adverse action. This lack of candor and failure to abide by their obligations to admit that Due Process was violated brings *Carey v. Piphus* again into consideration. Had they admitted what was evident, the Due Process question would have preceded the EEO question.

The US Attorney's Office was obligated to adhere to the findings in the precedent cases pertaining to notice, opportunity to respond, and the requirement to afford a hearing to dispute allegations. Instead, AUSA David Cooper argued in his written brief that appellant was not subject to the adverse action policy, even though during previous litigation, AUSA James Cho ceded the point that the reassignment was an adverse action (something agreed to by Judge Weinstein), and appellant cited four precedent cases defining it as an adverse action. This is a disingenuous attempt to play both sides of the fence. For the purposes of the EEO claim, appellant/defendant agrees that it was an adverse action, but when that adverse action would require Due Process considerations which were not adhered to, they argue that it was not an adverse action.

33

Appellant calls attention to Federal Rules of Civil Procedure, Rule 52(a)(5) and (6). Had the US Attorney's Office admitted to ATF's obvious failure to adhere to Due Process and federal law, and the glaring issues with Immesberger's credibility given the volume of contrary witness testimonies and other evidence, Rule 52(a)(5) pertaining to questioning evidentiary support, and Rule 52(a)(6) pertaining to setting aside the finding could have been (and might still be) considered. Again, the one issue of allowing appellant only three days until the effect of the reassignment is an unambiguous violation of Due Process. Three days can never equal seven days or thirty days. Likewise for Immesberger's credibility issues when behavior he described is refuted by multiple witnesses, or policy violations he described are not violations of any ATF policy.

### H. "A Clear Right to be Reinstated as a Special Agent"

Judge Donnelly stated that the Court has no basis to conclude that appellant has a "clear right to be reinstated as a Special Agent." Judge Donnelly is echoing the observation of Justice Oliver Wendell Holmes, Jr. in *McAuliffe v. Mayor of New Bedford*, 155 Mass. 216; 29 N.E. 517 (Mass. 1892), who stated that the plaintiff had "…no constitutional right to be a police officer." This standard has been overruled by more recent holding precedents which attach property rights to appellant's tenured occupation and appellant cannot be deprived of his occupation without Due Process. Respectfully, Judge Donnelly is omitting the language in the

34

case law and federal statute cited above that specifically state that violations of Due Process rights require that appellant be reinstated. The Fifth Amendment *guarantees* appellant the right to Due Process before the deprivation of his property (appellant's law enforcement occupation) and there is no requirement to demonstrate that appellant has a right to keep his property.

Instead, appellant is owed the statutory right to be treated fairly by ATF management under Title 5 USC 2301(b)(2), specifically referencing regard for Constitutional rights. ATF management circumvented their requirements to follow their own policies and adhere to Due Process by utilizing a non-adversarial process which afforded appellant no opportunity to dispute the allegations made against him. The allegations led to the fitness evaluation which led to the reassignment. It is a clear "bait-and-switch. Instead of corroborating allegations and providing a hearing, ATF management reassigned appellant just by merely *sending* appellant for a fitness evaluation under the guise of it being a medical evaluation. The result of the fitness evaluation is irrelevant because fitness or unfitness have the same effect – the reassignment - with appellant not having an opportunity for redress. By walking back the logic one more step, ATF management reassigned appellant simply by *making* allegations against him since the uninvestigated and unsubstantiated allegations led to appellant being sent for the fitness evaluation.

The Second Circuit's opinion that appellant is indeed fit for duty as the fitness report stated leaves unanswered the question of why appellant, a fully successful-rated employee, decorated for valor, with no relevant disciplinary history was reassigned without ever being charged with an offense.

## Conclusion

For the foregoing reasons, it is respectfully requested that the United States Court of Appeals for the Second Circuit vacate the judgement of the District Court with a finding of fact for the appellant and issue a mandamus order compelling the relief sought.

## Relief Sought by Appellant

Appellant seeks a motion to compel the reversal of his reassignment which would return appellant to his 1811 – Special Agent occupation, without restrictions or conditions, retroactive to June 7, 2009, with full retroactive consideration for retirement calculations and seniority as a Special Agent. Appellant asks the Court to compel a written admission from ATF be made stating that allegations are false, appellant never was unsafe or irresponsible with firearms, appellant was always fit for duty, and appellant should have remained an 1811 – Special Agent. Since no

monetary damages can be sought with this type of mandamus relief, the written admission would at least lend itself to rehabilitating the unjustly tarnished reputation of appellant. Appellant respectfully asks to be assigned to a specialty position such as Special Agent-Bomb Technician, K-9 Handler, or Certified Fire Investigator since those career enhancement opportunities were denied while appellant was wrongfully reassigned.

Respectfully Submitted,

Dated:  Farmingdale, NY

April 6 , 2023

By:

Adam Bruzzese, Appellant pro se

48 Weiden Street

Farmingdale, NY 11735

(732) 921-0741

Adam.Bruzzese@ATF.GOV

## **CERTIFICATE OF COMPLIANCE WITH FRAP 21(d), 32(a)**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 21(d)(1) because this brief contains 7,793 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in New Times Roman, 14 point font.

Respectfully Submitted,

Dated: Farmingdale, NY

_April 6_ , 2023

By: _Adam Bruzzese_

Adam Bruzzese, Appellant pro se

48 Weiden Street

Farmingdale, NY 11735

(732) 921-0741

Adam.Bruzzese@ATF.GOV

38

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

## Adam Bruzzese - Appellant

**CERTIFICATE OF SERVICE***

Docket Number: 23-239

v.

Merrick Garland, Attorney General of the United States- Appellee

I, Adam Bruzzese _____, hereby certify under penalty of perjury that

on _April 6_, 2023 _____, I served a copy of _Appellant Brief and Apellant Appendix_
(date)

(list all documents)

by (select all applicable)**

X Personal Delivery      X United States Mail      ___ Federal Express or other
                                                          Overnight Courier

___ Commercial Carrier      ___ E-Mail (on consent)

on the following parties:

| Varuni Nelson, Assistant US Attorney | 271A Cadman Plaza East | Brooklyn | NY | 11201 |
|---|---|---|---|---|
| Name | Address | City | State | Zip Code |
| Steven Dettelbach, Director of ATF | 99 New York Avenue NE | Washington | DC | 20226 |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

_April 6, 2023_
Today's Date

_[signature]_
Signature

Certificate of Service Form (Last Revised 12/2015)