# 23-239

IN THE

# 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

FOR THE SECOND CIRCUIT

--------------------------------------------

ADAM BRUZZESE,

*Plaintiff-Appellant,*

*v.*

STEVEN DETTELBACH,

Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives,

*Defendant-Appellee.*

_____

*On Appeal from the United States District Court*

*For the Eastern District of New York (Brooklyn)*

---

# REPLY BRIEF OF APPELLANT ADAM BRUZZESE

---

Adam Bruzzese, Pro Se

48 Weiden Street

Farmingdale, NY 11735

(917) 572-7450

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ……………………………………...………….. i

TABLE OF AUTHORITIES………………………………...……….. iii

STATUTES AND OTHER AUTHORITIES ……………………..….……… iv

INTRODUCTION…………………………………………………… 1

SUMMARY OF THE ARGUMENT………………………………… 2

THE ARGUMENT …………………………………………………...… 3

    I.    Appellee Cedes The Point On Various Due Process Violations In Their Opposition Brief………………………………….…………… 3

    II.    Appellee Misrepresents Appellant's Submissions To The Court …. 5

    III.    Appellee Misrepresents Appellant's Intent …………………..……… 7

    IV.    Appellant's "Statement of the Case" Contains Misleading Statements And Highlights Violations Of Due Process …………………………..… 7

    V.    Appellee Makes No Counter-Argument In Their Opposition Brief …………………………………………………….... 14

i.

VI.   The Court's Reliance On Rule 60(b) Implies The Existence Of Due Process Violations …………………………………………………… 17

VII.   Appellee Doesn't Counter The Assertion That The Allegations Against Appellant Are False ………………………………………… 18

VIII.  Appellee Never Satisfies Any Burden Of Proof ………………..… 19

IX.   Without Adjudication On The Merits, Collateral Estoppel And Res Adjudicata Do Not Apply …………………………………… 20

CONCLUSION ………………………………...………………………….. 21

CERTIFICATE OF COMPLIANCE WITH FRAP 32(a) …………..…….…..… 22

CERTIFICATE OF SERVICE ………………………………………………... 23

ii.

# TABLE OF AUTHORITES

**Cases**                                                                     **Page(s)**

King v. US Postal Service,

     71 MSPR 362, 266 (1997) …………………………..……….. 16

Leslie Kerr v. MSPB,

     17-2538 (Fed. Cir. 2018) ………………………….……… 6, 15

Stone v. Federal Deposit Insurance Company,

     179 F.3d 1368 (1999) …………………………….…......... 19

Slattery v. Swiss Reinsurance Am. Corp.,

     248 F.3d 87, 92 (2d Cir. 2001) …………………….……….. 9

Thornley v. Penton Publ., 104 F.3d 26,

     29 (2d Cir. 1997) ……………………………………………… 9

Ward v. US Postal Service,

     673 F.3d 1294 (Fed. Cir. 2012) ……………….……………… 19

| **Statutes** | **Page(s)** |
|---|---|
| 5 USC 556(d) ................................................................ | 19 |
| 5 USC 2301(b)(2) ......................................................... | 2, 14 |
| 5 USC 2301(b)(8)(A) .................................................... | 4 |
| 5 USC 7513(b) .............................................................. | 16 |
| 5 USC 7513 (b)(3) ........................................................ | 4 |
| 5 USC 7701 (c)(1) ........................................................ | 3 |
| 5 USC 7701(c)(1)(B) .................................................... | 19 |
| 28 USC 1361 ................................................................ | 7 |
| 28 USC 1651 ................................................................ | 7 |

| **Other Authorities** | **Page(s)** |
|---|---|
| Fifth Amendment of the United States Constitution ................. | 2, 14 |
| Federal Rules of Civil Procedure, Rule 60(b) .......... | 6, 13, 14, 15, 16, 17, 20 |

iv.

## **Introduction**

After receiving the Defendant-Appellee's opposition brief, the Appellant pro-se, Adam Bruzzese submits this brief in reply. Appellee provides no evidence to dispute the existence of multiple violations of Due Process which require the reversal of the adverse action taken against Appellant, pursuant to precedent case law and federal statutes. Appellee provides no evidence to demonstrate where any Court has declared that the adverse employment action was lawfully administered in terms of the Due Process requirements of notice, opportunity to respond, administration of a hearing, or exclusion of ex-parte statements. Appellee provides no evidence to demonstrate an adjudication on the merits of the issue presented by Appellant. Thus, the doctrines of collateral estoppel and res adjudicata were erroneously applied by the District Court in dismissing Case Number 22-cv-7948.

Aside from the procedural illegalities for which Appellee does not present any dispute, Appellee provides no dispute to the evidence presented that shows the allegations made by Appellant's previous supervisor, Eric Immesberger, are indeed false, having been disproven by numerous witnesses and other evidence. Appellee must admit that these allegations which were relied upon by the fitness evaluators and then-Special Agent in Charge Ronald Turk are false, and absent any credible or substantiated allegation of misconduct, the adverse action should never have been administered.

In short, precedent case law and federal statute both explicitly require the reversal of un-Constitutional adverse employment actions. Since the Motion to Compel seeks only a reversal of the adverse employment action in compliance with federal statutes and Appellee provides no evidence to counter the elements of the Motion to Compel, the injunctive relief should be granted.

## Summary of the Argument

The Motion to Compel or injunctive relief should require the Director of ATF, Steven Dettelbach, to perform a duty owed to Appellant under Title 5 USC 2301(b)(2) which states that Appellant must receive fair treatment in all aspects of personnel management with respect to Constitutional rights. The Fifth Amendment of the United States Constitution guarantees the right to Due Process. Precedent case law and federal statutes explain what Due Process is required in order to deprive a tenured employee of their occupation. Appellant was a tenured 1811 Special Agent and this occupation with its specific retirement benefits are indeed Appellant's property. ATF management administered an adverse employment action which deprived Appellant of this property without adherence to Due Process. The language in several precedent cases and federal statutes require the reversal of this adverse action.

## The Argument

The first fifteen pages of Appellee's opposition brief contain only an introduction and a statement of the events which contain a host if inaccurate statements as well as concessions to the existence of Due Process violations. The opposition brief contains only four pages of argument which can be boiled down to simply agreeing with the District Court. Appellee presents nothing to dispute the assertions or argument presented by Appellant.

## I.    Appellee Cedes The Point On Various Due Process Violations In Their Opposition Brief.

In their Preliminary Statement on pages two to three, Appellee states that Appellant's ability to function safely as an armed agent was questioned by management and that SAC Turk's decision was based on a totality of circumstances and instances of inappropriate conduct and the results of the Fitness For Duty (FFD) evaluation. This statement cedes the point that Due Process was not followed in making the adverse action. The standards of Due Process require proof by substantial evidence that Appellant had actually done something unsafely or performed sub-standardly in terms of safety (Title 5 USC 7701(c)(1)). The evidence in the record proves the opposite. Numerous co-workers testified to the safety and capability of Appellant, disproving the allegations made by

Immesberger. Appellant's continuation of Firearms Instructor duties and active participation in tactical training for many years after the reassignment, including under the tenure of SAC Turk, belie the notion that Appellant was thought to be unsafe with firearms.

Appellee specifically refers "inappropriate conduct." However, Appellee cites no charges related to any alleged misconduct or evidence in support of any charge, both of which are requirements of Due Process found in numerous precedent cases as cited on page 20 of Appellant's Brief and Appendix.

Appellee refers to "totality of circumstances." Again, this is not the standard required to lawfully administer an adverse action. As stated in Appellant's Brief and Appendix, a "totality of circumstances" is arbitrary and arbitrary actions are prohibited by Title 5 USC 2301(b)(8)(A).

Appellee refers to the reliance upon the FFD evaluation. The defendant/appellee's own expert witness, Dr. Alexander Bardey testified that the fitness evaluation was not a hearing. Appellee cites no hearing conducted by ATF which is required to adhere to Due Process as cited on page 23 of Appellant's Brief and Appendix. The failure to hold a hearing also deprived Appellant the use of counsel under Title 5 USC 7513(b)(3). The FFD report also advised ATF

management to follow their own administrative procedures, yet this is completely ignored by ATF management (Appellant Appendix, Pg. 26, second paragraph).

Appellee refers to ATF management's "belief" that Appellant had personality traits that made Appellant unsuitable. Again, their "belief" is not the standard required by Due Process. Allowing their "belief" to be the standard would undercut all of the civil service laws enacted to protect employees from improper adverse actions. The statutes and case law cited by Appellant require that ATF management prove by substantial evidence, even at the lowest burdens, that Appellant should suffer the adverse action. One supervisor's unsubstantiated "belief" clearly falls short of any burden of proof.

Appellee refers to the District Court's opinion that ATF provided legitimate, non-discriminatory, non-pretextual reasons for the reassignment. This is another admission that Due Process was not adhered to because there is no written notification of these supposed reasons ever given to Appellant, nor any citation of evidence to support such reasons.

## II.    Appellee Misrepresents Appellant's Submissions To The Court

On page three of their opposition brief, Appellee states that Appellant was seeking relief from the EEO judgement. This Court can clearly see that Appellant's submissions starting in March of 2020 after the close of the EEO claim all refer to

Due Process failures in administering the adverse action. All of the laws and precedent cases cited by Appellant in those submissions pertain to Due Process. The only references made to the EEO claim were to the evidence developed in the record, and the District and Circuit Court's opinions which forced the consideration of the Due Process failures. Appellant specifically cited <u>Leslie Kerr v. MSPB</u> to differentiate the two legal claims, and why the Due Process claim should be heard after the EEO claim ended.

Appellee also contradicts this statement on page three with their statement made on page thirteen of their opposition brief. On page thirteen, Appellee admits that the District Court construed Appellant's due process claim as a motion for reconsideration under Rule 60(b). Appellee admits that Appellant's initial submission to the Court was a motion to unseal the EEO record. The submission made by Appellant on March 27, 2020 explained that the motion to unseal the record was made to use the evidence from the record in an MSPB claim pertaining to Due Process as stated in the submission. (See Docket No. 93, Appellant Appendix, Pg. 32).

Appellee's statements cement the fact that the Due Process claim was dismissed on procedural grounds under Rule 60(b). This is a further admission by Appellee that the District Court erroneously applied res adjudicata and collateral

estoppel as a procedural dismissal does not limit Appellant from seeking the

Motion to Compel.

### III.     Appellee Misrepresents Appellant's Intent

On page four of their opposition brief, Appellee attempts to convert the

Motion to Compel into a re-litigation of the old claims. Appellant's attempt to

secure injunctive relief to overturn the illegal adverse action is not an attempt to re-

open the old claims. Appellant's Brief and Appendix submitted to this Court,

following the Summons and Complaint made to the District Court, all refer to

statutes that pertain to mandamus-style injunctive relief (Title 28 USC 1361 and

1651). All of the references to the earlier EEO and Due Process claims are made to

evidence the illegality and un-Constitutionality of the adverse action, the case law

and statutes' requirements to reverse such an illegal adverse action, or to

demonstrate the improper invocation of the res adjudicata and collateral estoppel.

As is seen in the relief sought by Appellant, there is no claim for damages. The

only remedy sought is the reversal of the illegal action as prescribed by law.

### IV.     Appellant's "Statement of the Case" Contains Misleading
### Statements And Highlights Violations Of Due Process

On page five of their opposition brief, Appellee admits that ATF

management violated their own policies at the onset of this event. Appellee states

that Reid had Immesberger conduct his own investigation. ATF policy required an investigation be conducted by internal affairs, not by the employee bringing the allegations. After the testimony is heard from several co-workers, it is evident that Immesberger either did no investigation, improper as it may have been, or falsified any finding of such investigation. Numerous co-workers refuted the allegations made by Immesberger including statements that Immesberger attributed to these individual co-workers.

On page six, Appellee makes a misrepresentation to the Court by stating that Reid "offered" an "opportunity" for Appellant to undergo a fitness evaluation. Evidence in the record shows that Appellant was sent for the evaluation under the guise of seeking medical information and the "consent" form contained language that advised of employment repercussions for not participating in the evaluation. By calling this an "offer" of an "opportunity," Appellee is trying to downplay or conceal the Due Process failure of ATF management's using the fitness evaluation in place of the required hearing which would have allowed Appellant to present a self-defense against allegations with the assistance of counsel. Instead of proving misconduct with supportive evidence, the fitness evaluation was used by SAC Turk despite its lack of confrontation of the allegations.

On page seven, Appellee is misleading the Court by omitting Dr. Goldhagen's testimony regarding Appellant's suitability for the job of an ATF

Special Agent. As is contained in Appellant's Brief and Appendix, Dr. Goldhagen specifically stated that suitability is not a medical issue, but instead is based on job performance (Appellant Appendix, pgs. 74-75, 77, 78-79). ATF's hiring of Appellant and Appellant's nine years of fully-successful service as an ATF Special Agent assumes that Appellant is suitable (Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 (2d Cir. 2001); Thornley v. Penton Publ., 104 F.3d 26, 29 (2d Cir. 1997) ("satisfactory job performance" at time of discharge)). Consistent with the FFD report's statement of past performance being the best indicator of future performance, the evidence shows that Appellant would have continued fully-successful employment as an ATF Special Agent.

Appellee further omits Dr. Goldhagen's testimony in which she stated that if the allegations made against Appellant were false, there would be no reason to restrict Appellant from returning to full duty. Again, Dr. Goldhagen stated that the only concerns were management's concerns, not medical/psychological issues. The FFD report stated that Appellant is accountable for his behavior. This coincides with the FFD report's advice to ATF management to follow their administrative policies. Since ATF's concerns were not medical or psychological issues, but concerns about behavior or conduct, ATF was required to adhere to Due Process in administering the adverse action by charging Appellant with misconduct or poor performance. It seems as though Appellee's omissions are intended to vilify and defame Appellant. Appellee does not offer any counter-argument to the testimonies

of Drs. Ahmad and Goldhagen who stated that Appellant was fit for duty and not unsuitable for law enforcement.

On page nine, Appellee attempts to sugar-coat the reassignment from an 1811 Special Agent to an 1801 Technical Surveillance Specialist (TSS) to make it seem to the Court that the reassignment is somehow acceptable. It is a deceptive attempt to soften the blow of the deprivation of Appellant's property, and make it appear like a not-so-adverse action. Appellee states that Law Enforcement Availability Pay (LEAP) and Administratively Uncontrollable Overtime (AUO) are equivalent when they are absolutely not equivalent. There are two major distinctions. LEAP is paid for all days during the week excluding Saturday and Sunday, even for federal holidays, sick days and vacation days. However, AUO is not paid when an employee does not work regular hours for that day. As an 1801, if Appellant were to take a week's vacation, Appellant would only receive regular pay for that week with no AUO, but as an 1811, Appellant would have been paid regular pay plus LEAP even while on leave. More importantly, an 1811's retirement annuity is calculated from base pay *plus* LEAP, whereas the 1801's retirement is calculated from *only the base pay* excluding AUO.

Appellee is also omitting the other aspects of the loss of "6c" retirement benefits which include the reduction in retirement percentage from accruing 1.7% annually for the 1811 to 1.1% annually for the 1801. Additionally, as an 1811,

Appellant would be eligible for full retirement at age 50 with more than 20 years of service. As an 1801, Appellant is not eligible until completing 30 years of service. This requires Appellant to stay employed for an additional 3+ years to achieve full retirement. Separating before full retirement is achieved would remove Appellant's ability to participate in the federal health benefits and life insurance programs.

These monetary and retirement implications do not speak to the reduction of duties and responsibilities that took place after the reassignment as stated in Appellant's Brief and Appendix. There is also the loss of job opportunities with the specializations available for 1811 employees as well as promotion potential which are not available to the 1801 employee.

On page eleven, Appellee makes references to Honorable Judge Jack Weinstein's opinion related to "a mistake under stressful circumstances." This is again misleading because there is no evidence presented to show that Appellant made any such mistake. The evidence shows that Appellant was considered by co-workers to be a safe agent, Delano Reid considered Appellant to be a "good agent" and an "asset to the division," the testing in the FFD evaluation showed good scores for constraint, performance evaluations showed high marks for decision-making, and that co-workers preferred Appellant's participation in high-risk operations. Appellant's work history shows that after participation in hundreds of law-enforcement operations over nine years, Appellant discharged his firearm one

time (outside of training or testing) and that action was determined to be lawful, within-policy, and valorous.

Appellee further quotes Judge Weinstein's opinion that a "supervisor could find it probable that [Appellant] lacks the personality to react responsibly to sudden psychological stress or emotional trauma." Aside from this being similarly misleading due to the volume of contrary evidence in the record, these are examples of Judge Weinstein affirming the existence of violations of Due Process. There are no charges filed nor any supporting evidence cited by ATF management related to any mistake made under stressful circumstances or irresponsible reactions attributed to Appellant. Appellant's demonstration of valorous action under extreme conditions accompanied by the absence of any instance of misconduct or sub-standard performance (under stress or otherwise) mesh with the FFD report's assertion that the best indicator of future performance is past performance.

On page twelve, Appellee is trying to confuse the issue before the Court. First, Appellee is again citing the unsolicited outside motion made by Michael Buesgens, a person unknown to Appellant. Appellee previously attempted to argue in Case Number 21-1448 that Appellant didn't want to re-open litigation when Appellant notified the court of the fraudulence of Mr. Buesgens' interference in the litigation. Appellant made it readily apparent that there was no need for District

Court intervention at the time of the Buesgens interference because Appellant was seeking administrative remedies pertaining to Due Process and Prohibited Personnel Practices.

In the next paragraphs, Appellee is cherry-picking excerpts from Appellant's District Court submissions to attempt to alter the meaning of what Appellant was seeking. The fact remains that Appellant sought administrative remedies to reverse the adverse action based on Due Process violations and Prohibited Personnel Practices after the EEO claim was dismissed because the Court deemed Appellant to be fit for duty (if Appellant was indeed fit for duty, why was he reassigned?). It was only when the MSPB asked for evidence contained in the sealed record from Case Number 13-cv-5733 did Appellant make the motion to unseal that record. When the MSPB dismissed the complaint before a decision was made to unseal the record, Appellant brought the Due Process claim to the District Court as the next step in litigation, having exhausted the administrative remedies.

On page thirteen, Appellee cedes the point that it was the District Court who construed Appellant's submissions as an attempt at relief from the EEO finding under Rule 60(b), and the second appeal pertained to the denial of relief under Rule 60(b). The dismissal of the Due Process claim under Rule 60(b) is procedural and does not preclude Appellant from seeking the injunctive relief before this Court in Case Number 23-239.

## V. **Appellee Makes No Counter-Argument In Their Opposition Brief**

Appellee claims that Appellant's allegations of Due Process violations are baseless and have already been unsuccessfully raised in prior cases. This is unfortunately another example of Appellee's lack of candor. As an Officer of the Court, Appellee is required to admit what is evident. Appellee cites no evidence to show where Appellant was afforded any of the elements of Due Process required by the case law and statutes cited by Appellant. Appellee has previously argued in Case Number 21-1448 and again notes on pages thirteen to fourteen of their opposition brief that the previous Due Process claim was dismissed under Rule 60(b), not adjudicated on the merits. Appellee fails to cite any Court proceeding where the elements of Due Process were heard and found no violations of Due Process. To this day, Appellee cannot cite any evidence to dispute the violations of Due Process raised by Appellant.

In their Argument starting at page sixteen of the opposition brief, Appellee merely repeats what the District Court stated in Case Number 22-cv-7948. Appellee offers no opposition to the elements comprising the Motion to Compel or mandamus relief. Appellant is owed fair and equitable treatment specifically regarding Constitutional rights under Title 5 USC 2301(b)(2). The case law and statutes that prescribe what is required to adhere to Due Process *guaranteed* by the Fifth Amendment unambiguously state that adverse actions taken in violation of

14

Due Process must be reversed. Appellee states no opposition to the multiple violations of Due Process cited by Appellant which are supported by evidence.

Appellee attempts to link the adjudication of the EEO claim to an adjudication of the Due Process claim as if they are one and the same. This is contradicted by Appellant's citation of <u>Leslie Kerr v. MSPB</u> in the Due Process claim, arguing that the Due Process claim should be heard as a new claim after the EEO claim could not provide a remedy (notably, the Damned if you do, Damned if you don't statement made by the Circuit Court Judge during oral argument of the EEO claim). This link is further contradicted by Appellee's own argument during Case Number 21-1448 that the Due Process claim should not be heard under Rule 60(b), and Appellee's citation of the Court's findings regarding Rule 60(b). Appellee has already argued that the Due Process claim should not be heard, so logically, they can't now argue that it has already been heard and adjudicated.

Appellee argues that res adjudicata prohibits making claims that arise from the same action to limit a seemingly endless stream of litigation from one event. Aside from the question of whether the claim was adjudicated on the merits, this mandamus-style injunctive relief is not a new "claim," but seeks to compel ATF to perform a duty owed to Appellant. Since Appellant is still employed by ATF as an 1801, and still would have been employed as an 1811, this deprivation of property is still ongoing. It's not merely a past event springing forth various claims from

one starting point. Even applied retroactively as required by <u>King v. US Postal Service</u>, Appellant would stand to regain as an 1811 Special Agent the continual practice of his law enforcement occupation from this point forward as well as be availed of specialized positions or promotion potential.

Appellee presents no evidence where the Due Process requirements were adhered to by ATF and where this was ever presented to any Court in opposition to any claims made by Appellant. In the EEO claim, Appellant included ATF's violations of Due Process in the pretext and otherwise-qualified prongs. When the Second Circuit declined to consider those prongs because the first prong could not be proven due to Appellant's fitness for duty, Appellant brought the Due Process violations as a new claim which was procedurally dismissed under Rule 60(b). Appellee cites no Court finding in either the EEO claim or Due Process claim which states that Due Process was properly administered in effecting the adverse action. The opposite is evident in Judge Weinstein's opinion that ATF provided non-pretextual reasons, yet there is no written notification of any such reason or supportive evidence for such reason given to Appellant by ATF.

Appellee cites no Court finding that addresses the requirement affording Appellant 30 days' notice of the adverse action or the statutory minimum seven days' notice in an extenuating circumstance under Title 5 USC 7513(b). Appellee obviously must admit that the reassignment memo (Appellate Appendix pg. 27)

afforded only three days' notice of the effect of the adverse action. This chronological illegality which cannot be disputed is by itself a separate Due Process violation requiring the reversal of the adverse action. Similar failures to abide by procedural deadlines in adverse employment actions against law enforcement officers resulting in the reversal of those adverse actions were cited by Appellant submissions to ATF management and the Court.

## VI.   The Court's Reliance On Rule 60(b) Implies The Existence Of Due Process Violations

Appellee's previous argument for the dismissal of the Due Process claim and their citation of the Court's dismissal under Rule 60(b) is further evidence of the existence of the Due Process violations. The Court's opinion that Appellant could have amended his complaint demonstrates that there were Due Process violations that could have been made, notwithstanding the fact that they were included in the EEO complaint. The Court did not make an adjudication that Due Process violations didn't exist on the basis of having no legal foundation or evidence to support their occurrence. If the Due Process violations didn't exist the Court would have nothing against which to apply Rule 60(b). The opinion was that the Due Process violations did not satisfy the elements necessary for relief under Rule 60(b) and thus Appellant's Due Process claim would not be heard.

### VII. Appellee Doesn't Counter The Assertion That The Allegations Against Appellant Are False

Aside from the procedural elements discussed in these briefs, Appellee provides no dispute to the factual falseness of the allegations made by Immesberger against Appellant. It has already been widely discussed that the evidence in the record shows that Immesberger's allegations against Appellant are not true. It is indisputable that had Immesberger not made these false allegations, Appellant would not have been sent for a fitness evaluation, or at worst, Dr. Goldhagen's report would have stated that Appellant should be returned to full duty, something to which she testified. As has already been demonstrated in Appellant's Brief and Appendix, Due Process required ATF to provide a hearing with an opportunity to present evidence that the allegations are false.

Aside from the falseness of the allegations, Appellee provides no dispute to the inclusion of ex-parte statements, something barred by precedent case law which explicitly states that a violation of this kind must result in the reversal of the adverse action. There can be no argument made, and no Court ever stated, that there aren't indeed two separate sets of allegations made by Immesberger, and both sets of allegations were relied upon by SAC Turk in administering the adverse action. It is a fact which is documented in the record from multiple sources, namely Immesberger's memo to Reid and Dr. Ahmad's file. Again, the Court

opined that when the second set of allegations came to light during discovery,

Appellant could have amended his complaint. The Court did not state that there

was no second set of allegations, but rather their opinion is evidence that there was

a second set of allegations made outside the knowledge of Appellant. Pursuant to

the language contained in the <u>Stone v. FDIC</u> and <u>Ward v. US Postal Service</u>

precedents, an adverse action administered with the inclusion of ex-parte

statements must be reversed.

### VIII. <u>Appellee Never Satisfies Any Burden Of Proof</u>

With Appellee not providing any dispute to the various Due Process

violations, another issue is evident. ATF management has never proven by

substantial evidence that the adverse action should occur as required by federal

statutes 5 USC 556(d) and 7701(c)(1)(B). Had ATF management proven by

substantial evidence under any burden no matter how low, Appellee could cite

such proof in their opposition brief, or cite the consideration of such proof by any

Court in an adjudication on the merits of the Due Process claim. Without ATF

management providing any of the required proof at the time of the adverse action,

not only is Due Process violated, but Appellant is unfairly deprived of his property

by the utterance of mere allegations. Even at this stage, with Appellee standing to

lose nothing in terms of a claim for damages, and Appellant only seeking the

reversal of an illegal action, Appellee still can provide no evidence to show that the

allegations are true or that Immesberger is a credible witness, and Appellee offers no counter to the evidence presented by Appellant that demonstrates that the allegations are proven false.

## IX.   Without Adjudication On The Merits, Collateral Estoppel And Res Adjudicata Do Not Apply.

Since there is no evidence provided by Appellee that shows any adjudication on the merits by any Court and Appellee's agreement that the Due Process claim was procedurally dismissed under Rule 60(b), the doctrines of res adjudicata and collateral estoppel were erroneously applied. No Court has ever adjudicated on the merits, either fairly or completely, these demonstrable Due Process failures. The District Court's reliance upon supposed reasons for the reassignment whose written notification is never given to Appellant, and are unsupported by any evidence of their existence, renders the EEO decision as invalid and nullifies the doctrines of res adjudicata and collateral estoppel because the District Court relied on un-Constitutional actions by ATF management. Despite the inclusion of these Due Process failures in the later prongs of the EEO claim, the Second Circuit in Case Number 21-1448 specifically stated that they did not address them.

## **Conclusion**

For the foregoing reasons and in conjunction with Appellant's initial brief, it is respectfully requested that the United States Court of Appeals for the Second Circuit vacate the judgement of the District Court with a finding of fact for the Appellant and grant the injunctive relief being sought.

Respectfully Submitted,

Dated: Farmingdale, NY
July 26, 2023

By:

Adam Bruzzese, Appellant pro se
48 Weiden Street
Farmingdale, NY 11735
(917) 572-7450
Adam.Bruzzese@ATF.GOV

# **CERTIFICATE OF COMPLIANCE WITH FRAP 32(a)**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(ii) because this brief contains 4,573 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in New Times Roman, 14 point font.

Respectfully Submitted,

Dated: Farmingdale, NY

July 26 , 2023

By:

Adam Bruzzese, Appellant pro se

48 Weiden Street

Farmingdale, NY 11735

(917) 572-7450

Adam.Bruzzese@ATF.GOV

22

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

## Adam Bruzzese - Appellant

**CERTIFICATE OF SERVICE\***

Docket Number: __23-239__

v.

Steven Dettelbach, Director of ATF - Appellee

I, __Adam Bruzzese__, hereby certify under penalty of perjury that
(print name)

on __July 26__, 2023 __, I served a copy of **Reply Brief of Appellant**
(date)

(list all documents)

by (select all applicable)\*\*

X Personal Delivery      ___ United States Mail      ___ Federal Express or other
                                                      Overnight Courier

___ Commercial Carrier      ___ E-Mail (on consent)

on the following parties:

| David Cooper, Assistant US Attorney | 271A Cadman Plaza East | Brooklyn | NY | 11201 |
|---|---|---|---|---|
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |

\*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or
proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously
filed.

\*\*If different methods of service have been used on different parties, please complete a separate
certificate of service for each party.

__July 26, 2023__                    _____
Today's Date                        Signature

Certificate of Service Form (Last Revised 12/2015)